UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAHLEN DWAYNE MONROE-HINDS,

Plaintiff,

v.

MICHAEL BURGESS et al.,

Defendants.

Case No. 1:26-cv-582

Honorable Sally J. Berens

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.”).[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below. The Court will also deny Plaintiff's “Request for Motion for Guidance.” (ECF No. 9.)

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. (Letter, ECF No. 10, PageID.29.) The events about which he complains occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.[2] (Compl., ECF No. 1, PageID.2.) Plaintiff

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), “context matters” and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of “parties” and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of “the term ‘parties’ solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of ‘parties’ in other contexts”).

[2] Since filing his complaint, Plaintiff has submitted several letters to the Court regarding his confinement following the events in the complaint. (Letters, ECF Nos. 4, 5, 6, 7, 8, 10.) However,

sues the following people at ECF: Prison Counselor J. Benett;[3] Sergeant Unknown Mitchell; Hearing Investigator Unknown Goodspeed; Grievance Coordinator T. Bassett; Mailroom Staff Members A. Anderson and Unknown Kisson; Corrections Officer (CO) Unknown Saylor; Hearing Officer Unknown Armstrong; Unit Chief Unknown Ensing; Warden Michael Burgess; Lead Qualified Mental Health Professional Sierra Dunlap; Chaplain Unknown Van Dam; Nurse Practitioner Unknown Moody; and Registered Nurses Lydia Pant and Rachel Lubitz. (*Id*., PageID.2–4.)

In Plaintiff's complaint, he alleges that on December 29, 2025, he filed a grievance against Defendants Saylor and Benett and non-party CO "Limon" for "repetitively trying to drag [Plaintiff] out of a chair while [he] was in restraints and defenseless."[4] (*Id*., PageID.5.) Plaintiff also filed a "CSJ-881" form request for body camera footage of the incident. (*Id*.) On December 30, 2025, Defendant Mitchell wrote Plaintiff a misconduct ticket "for the body cam form [that Plaintiff] put in the day before on 12-29-25." (*Id*.) The misconduct hearing was held on January 2, 2026, and Plaintiff asserts that "after footage review," he "beat the ticket" because Defendant Armstrong "did not believe [Plaintiff] misused the CSJ-881 form." (*Id*.) Plaintiff also states that he filed "another" grievance against Defendant Mitchell on January 2, 2026. (*Id*.)

Also, on December 29, 2025, Plaintiff asserts that he filed a grievance against the mailroom for "excessively holding [Plaintiff's] mail." (*Id*.) On January 16, 2026, Plaintiff states that his legal

---

Plaintiff has not sought leave to amend or supplement his complaint. The Court notes that Plaintiff is free to file a new civil action in this Court presenting claims regarding these subsequent events.

[3] In Plaintiff's list of defendants, he spells Defendant Benett's name as "Benett," (*see* Compl., ECF No. 1, PageID.2), but in the body of Plaintiff's complaint, he spells it as Defendant "Bennett," (*see id.,* PageID.5). In this opinion, the Court will use the first spelling with one "n" as it is spelled in Plaintiff's list of Defendants.

[4] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

mail was opened outside of his presence and sent through the regular mail. (*Id.*) Plaintiff "had been placed on 90 day modified access so all [Plaintiff] could do [was] file a CSJ-881 and write the ombudsman." (*Id.*)

On January 7, 2026, Plaintiff asserts he was "staged down" so Plaintiff "didn't get [his] Christmas bag," which arrived late. (*Id.*) Plaintiff states he went on suicide watch because his "depression flared after not receiving a Christmas bag." (*Id.*) "Mental health ([Defendant] Dunlap and [Defendant] Ensing) w[ere] informed but failed to properly act, despite [Plaintiff] warning of potential dangers of retaliation." (*Id.*) Plaintiff concludes that "they failed to protect [him] as a mentally ill prisoner." (*Id.*)

On January 19, 2026, Plaintiff sent a kite to Defendant Dunlap "about having demonic encounters," but she "just referred [Plaintiff] to the chaplain," Defendant Van Dam. (*Id.*) Plaintiff asserts that Defendant Van Dam brought Plaintiff a Christian prayer despite Plaintiff telling Defendant Van Dam that Plaintiff is a "vodou priest." (*Id.*) Plaintiff alleges Defendant Van Dam told Plaintiff that he does not "recognize that religion, so pick another one." (*Id.*)

On January 27, 2026, Plaintiff received his grievance appeals "but the date said they had to be turned in by 1-21-26 or they w[ould] be terminated." (*Id.*) Plaintiff asserts that the mailroom "initially" held his mail. (*Id.*) Plaintiff claims that he filed "two CSJ-881 forms." (*Id.*)

On January 30, 2026, Plaintiff asserts that Defendant Pant disclosed Plaintiff's medical information "in front of 23 inmates and [non-party CO] Stone." (*Id.*) Plaintiff "proceeded to file a CSJ-881 form to support [his] claim." (*Id.*) Later that same day, on January 30, 2026, Plaintiff asserts that Defendant Lubitz "wrote a healthcare kite forging [Plaintiff's] name on it [and] then charged [Plaintiff's] account without [his] signature." (*Id.*) On February 4, 2026, "[Defendant] Moody conducted [Plaintiff's] medical appointment on B-lower [housing unit] 4 in front of 23

inmates and 2 COs at which [Defendant Moody] had [non-party] Officer Fink sign [Plaintiff's] medical documents." (*Id.*) Plaintiff asserts that he did not give them permission to sign for him, so he filed another "CSJ-881" form. (*Id.*)

On February 5, 2026, Defendant Benett reviewed Plaintiff "on a notice of intent written by [Defendant] Moody for a $5.00 co-pay." (*Id.*) On February 6, 2026, Plaintiff asserts that he received his mail back saying he had no funds, but Plaintiff asserts he was previously "approved for indigent" on February 1, 2026. (*Id.* (phrasing in original retained).)

Based on the foregoing allegations, Plaintiff asserts the following claims: equal protection and due process claims under the Fourteenth Amendment; failure to protect, excessive force, and inadequate medical care claims under the Eighth Amendment; and free exercise of religion, interference with receipt of legal mail, and retaliation claims under the First Amendment. As relief, Plaintiff seeks nominal, punitive, and compensatory damages. (*Id.*, PageID.6.)

## II. "Request for Motion for Guidance"

Plaintiff filed a motion titled, "Request for Motion for Guidance," in which he stated that he had not yet received a response from the Court regarding his complaint and requested a "speedy mediation date." (Mot., ECF No. 9.) Because this opinion and the corresponding order partially dismiss Plaintiff's complaint, Plaintiff's remaining action is now eligible for referral to the Prisoner Civil Rights Early Mediation Program. Therefore, Plaintiff's request for a "speedy mediation date" is rendered moot and the Court will deny this motion.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV. Analysis

### A. Defendants Burgess, Goodspeed, Bassett, Anderson, and Kisson

Plaintiff names Defendants Burgess, Goodspeed, Bassett, Anderson, and Kisson as Defendants in his list of Defendants. (Compl., ECF No. 1, PageID.2, 4.) However, Plaintiff fails to name these Defendants in the body of his complaint. (*See id*., PageID.5.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore*, 92 F. App'x at 190.

Here, Plaintiff does not name Defendants Burgess, Goodspeed, Bassett, Anderson, or Kisson in the body of his complaint and thus makes no particular factual allegations against these Defendants. Therefore, any intended claims against these Defendants fall short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2).

Accordingly, for the reasons set forth above, any intended claims against Defendants Burgess, Goodspeed, Bassett, Anderson, and Kisson are properly dismissed.

**B. Eighth Amendment Excessive Force Claims**

Plaintiff asserts that Defendants Saylor and Benett violated Plaintiff's Eighth Amendment rights when they tried to drag Plaintiff out of a chair while he was restrained.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Id*. at 345–46. As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, 'the maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (alteration omitted) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

A claim of excessive force under the Eighth Amendment has an objective component and a subjective component. *Hudson*, 503 U.S. at 8–9. First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline[,] or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (quoting

*Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley*, 475 U.S. at 327).

In this case, Plaintiff alleges that on December 29, 2025, he filed a grievance against Defendants Saylor and Benett for "repetitively trying to drag [Plaintiff] out of a chair while [he] was in restraints and defenseless." (Compl., ECF No. 1, PageID.5.) However, Plaintiff's cursory, one-sentence allegation against Defendants Saylor and Benett is insufficient to assert a claim of excessive force under the Eighth Amendment. Plaintiff does not explain why he was in restraints. Thus, this Court cannot discern from Plaintiff's factual allegations whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Hudson*, 503 U.S. at 7. Further, Plaintiff does not state whether he was injured due to Defendants' actions. *See Williams*, 631 F.3d at 383. Not every shove or restraint gives rise to a constitutional violation, and Plaintiff's own allegations do not allow this Court to draw the inference that Defendants' actions involved the unnecessary and wanton infliction of pain. *See Parrish*, 800 F.2d at 604; *Rhodes*, 452 U.S. at 346.

Accordingly, for these reasons, Plaintiff fails to state a claim of excessive force against Defendants Saylor and Benett.

### C. Claims regarding Medical Appointments and Disclosure of Medical Information

Plaintiff raises claims against Defendant Pant and Defendant Moody regarding medical appointments and the disclosure of Plaintiff's medical information. Plaintiff asserts that on January

30, 2026, Defendant Pant disclosed Plaintiff's medical information in front of 23 inmates and a CO. (Compl., ECF No. 1, PageID.5.) And on February 4, 2026, Plaintiff claims that Defendant Moody conducted Plaintiff's medical appointment "on B-lower [housing unit] 4 in front of 23 inmates and 2 COs . . . ." (*Id.*)

The Eighth Amendment's deliberate indifference standard also applies to claims regarding medical care. *Mingus v. Butler*, 591 F.3d 474, 479 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims). In order for a prisoner to assert an Eighth Amendment claim regarding the inadequacy or denial of medical care, he must allege facts to satisfy both the objective and subjective prongs of the deliberate indifference standard. *Id.* at 479–80. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Farmer*, 511 U.S. at 834. The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). An inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition cannot constitute a violation of the Eighth Amendment. *Id.* at 105–106.

Applying these standards, the facts as alleged by Plaintiff do not show Defendants acted with deliberate indifference to Plaintiff's serious medical needs. As an initial matter, the facts as alleged by Plaintiff do not meet the objective prong of a claim for inadequate medical care because Plaintiff does not state what medical need he sought treatment for. *Farmer*, 511 U.S. at 834. Even

assuming, without deciding that, Plaintiff sought mental health treatment because Plaintiff asserts that he has depression and that his depression "flared" in January 2026, such that Plaintiff was placed on suicide watch, Plaintiff's factual allegations do not indicate that he was denied medical care. Instead, the facts show that Plaintiff had a medical appointment with Defendant Moody, and Plaintiff does not assert any inadequacy with the care or treatment provided. Therefore, Plaintiff fails to state a claim under the Eighth Amendment regarding the medical care that Plaintiff received at his medical appointments.

As to Plaintiff's claim that Defendants disclosed Plaintiff's medical information and conducted his medical appointment in front of other inmates and COs, some claims of disclosure of personal information can implicate a person's liberty interest under the Due Process Clause of the Fourteenth Amendment. But the United States Court of Appeals for the Sixth Circuit has held that "the Constitution does not encompass a general right to nondisclosure of private information." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981); *see also Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998) (nonconsensual disclosure at press conference of details of plaintiff's rape).

Here, Plaintiff does not state what medical information was disclosed. Thus, Plaintiff's factual allegations do not indicate that the release of his medical information could have led to bodily harm or was of a sexual, personal, and humiliating nature. *See Kallstrom*, 136 F.3d at 1061;

*Bloch*, 156 F.3d at 684. Plaintiff alleges no facts to support an inference that Plaintiff was exposed to risk from other prisoners or COs due to the disclosure of his medical information. Indeed, Plaintiff only vaguely alleges that Defendant Moody disclosed Plaintiff's medical information and conducted Plaintiff's medical appointment in front of others. Therefore, Plaintiff's claims against Defendants Moody and Pant regarding the disclosure of Plaintiff's medical information will be dismissed for failure to state a claim.

In summary, for the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendants Moody and Pant will be dismissed for failure to state a claim.

**D. Claims regarding Forgery and Deprivation of Property**

Plaintiff also raises claims of forgery and deprivation of property against Defendants Lubitz, Moody, and Benett regarding his medical documents and a co-pay for a medical appointment.

Plaintiff asserts that on January 30, 2026, Defendant Lubitz "wrote a healthcare kite forging [Plaintiff's] name on it [and] then charged [Plaintiff's] account without [his] signature." (Compl., ECF No. 1, PageID.5.) Then, at Plaintiff's medical appointment on February 4, 2026, Plaintiff claims that Defendant Moody had a non-party CO sign Plaintiff's medical documents without his permission. (*Id.*) The next day, Defendant Benett reviewed a notice of intent with Plaintiff written by Defendant Moody for a $5.00 co-pay. (*Id.*)

It is unclear what constitutional claim Plaintiff intends to bring regarding the alleged forgery of his signature. Forgery is a criminal offense that does not rise to the level of a constitutional violation. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (discussing that Section 1983 does not provide redress for a violation of state law). Thus, Plaintiff fails to state a claim under Section 1983 for the alleged forgery of his signature.

As to Plaintiff's claim that he was charged a $5.00 co-pay without his permission, the Court construes Plaintiff's factual allegations to assert a claim of deprivation of property under the Fourteenth Amendment's Due Process Clause. However, to the extent that Plaintiff claims that the charge was a "random and unauthorized act," Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a prisoner who was deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Here, Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the alleged unauthorized charge.

To the extent that Plaintiff asserts that Defendants did not follow MDOC procedure or policy when they improperly charged him a co-pay, he fails to state a claim under Section 1983. Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982), and Section 1983 does not provide redress for a violation of state law. *Pyles*, 60 F.3d at

1215; *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (holding that a parole board's failure to follow state procedural standards could constitute a violation of state law but not federal law).

Accordingly, for all of the reasons set forth above, Plaintiff's claims against Defendants Lubitz, Moody, and Benett are properly dismissed for failure to state a claim.

**E. Fourteenth Amendment Equal Protection Clause Claims**

In Plaintiff's complaint, he states that he is bringing claims under the Equal Protection Clause of the Fourteenth Amendment. (Compl., ECF No. 1, PageID.5.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, although Plaintiff alleges that his rights were violated under the Equal Protection Clause, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. *See Scarbrough*, 470 F.3d at 260. Instead, any allegations of

discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, for these reasons, any intended equal protection claims are properly dismissed for failure to state a claim.

### F. First Amendment Claims

#### 1. Retaliation

The Court construes Plaintiff's complaint to raise a claim of retaliation under the First Amendment against Defendant Mitchell regarding a misconduct ticket Mitchell issued to Plaintiff for filing a request for body camera footage of the December 29, 2025 incident. (Compl., ECF No. 1, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* A plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although Plaintiff's allegations lack specificity, at this early stage of the proceedings, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Mitchell regarding the misconduct ticket Mitchell issued to Plaintiff for filing a request for body camera footage of the December 29, 2025 incident.

**2. Free Exercise of Religion**

The Court also construes Plaintiff's complaint to raise a free exercise of religion claim under the First Amendment against Defendant Dunlap and Defendant Van Dam.

Inmates retain their First Amendment right to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish a violation of the right to freedom of religion, a plaintiff must show (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that the defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials"). A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

Here, Plaintiff alleges that he sent a kite to Defendant Dunlap about "having demonic encounters," and Defendant Dunlap "referred [Plaintiff] to the chaplain," Defendant Van Dam.

(Compl., ECF No. 1, PageID.5.) Defendant Van Dam brought Plaintiff a Christian prayer despite Plaintiff telling Defendant Van Dam that Plaintiff is a "vodou priest." (*Id.*) Defendant Van Dam told Plaintiff that he does not "recognize that religion, so pick another one." (*Id.*)

As explained below, Plaintiff's factual allegations do not show that Defendants Dunlap and Van Dam infringed on Plaintiff's free exercise of his religious beliefs. As an initial matter, Plaintiff does not allege that Defendant Dunlap was aware of Plaintiff's religious beliefs, nor allege that the referral to Defendant Van Dam placed a substantial burden on Plaintiff's observation of his religious beliefs. Plaintiff's own allegations show that he was not restricted from practicing his religion and was not required to talk to Defendant Van Dam. Plaintiff merely sought help with his "demonic encounters" and disagrees with the help he received from Defendant Van Dam. While Defendant Van Dam's comment may have been insensitive to Plaintiff's religious beliefs, Plaintiff fails to allege any facts to show that it placed a substantial burden on Plaintiff's right to observe his religious beliefs.

Accordingly, Plaintiff fails to state a violation of his right to freely exercise his religion under the First Amendment and this claim is properly dismissed.

### G. Claims regarding Placement on Modified Grievance Access and Legal Mail

Plaintiff also alleges that he was placed on "modified access," which prohibited him from filing grievances for 90 days and prohibited him from filing a grievance regarding his legal mail being opened outside of his presence. Plaintiff also asserts the mailroom "excessively hold[s]" his mail. (Compl., ECF No. 1, PageID.5.)

As an initial matter, Plaintiff alleges that he "was placed on 90 day modified access," that his mail was opened outside his presence, and that the mailroom excessively holds his mail, but he does not identify who was responsible for these actions. (Compl., ECF No. 1, PageID.5.)

Because Plaintiff does not identify who was responsible, Plaintiff necessarily does not allege that any of the named Defendants were involved in Plaintiff's placement on modified access or the alleged mishandling of his mail. Plaintiff only alleges that he filed a grievance "on the mailroom" for holding his mail (*See id.*) But "[s]ummary reference to a single, five-headed 'Defendants'" does not support a reasonable inference that each Defendant working in the mailroom is liable. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Because Plaintiff does not attribute any factual allegations regarding his placement on modified access and mishandling of legal mail to any particular Defendant, Plaintiff's claims are subject to dismissal.

Even setting aside Plaintiff's failure to attribute factual allegations to particular defendants regarding modified access, Plaintiff's claims regarding his placement on modified access are subject to dismissal for failure to state a claim. The Sixth Circuit has addressed the constitutionality of placing a prisoner on modified access and held that "there is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005).

Further, to the extent that Plaintiff intended to raise a First Amendment claim regarding his placement on modified grievance access, "[a] prisoner's constitutional right to assert grievances

typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Plaintiff had other means of exercising his right to petition government for redress of grievances. Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Additionally, Plaintiff was not wholly denied access to the grievance process because placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker*, 128 F. App'x at 445–47; *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ SS (eff. Oct. 21, 2024).

Accordingly, Plaintiff's claims regarding modified grievance access and legal mail are properly dismissed for failure to state a claim.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) The Court will deny Plaintiff's motion for request for guidance as moot. (ECF No. 9.) Further, having conducted the review required by the PLRA, the Court determines that Defendants Benett, Goodspeed, Bassett, Anderson, Kisson, Saylor, Armstrong, Ensing, Burgess, Dunlap, Van Dam Moody, Pant, and Lubitz will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Additionally, the Court will dismiss, for failure to state a claim, any intended claims against remaining Defendant Mitchell, other than

Plaintiff's First Amendment retaliation claim against Mitchell. Plaintiff's First Amendment retaliation claim against Defendant Mitchell will remain in the case.

An order consistent with this opinion will be entered.

Dated: September 25, 2026

/s/ Sally J. Berens
SALLY J. BERENS
United States Magistrate Judge